UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY ELLIS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>HARDER MECHANICAL CONTRACTORS, INC.,<br><br>    Defendant. | Case No. 21-cv-00844-JSW<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND COSTS, AND ENTERING FINAL JUDGMENT**<br><br>Re: Dkt. No. 28 |

This matter comes before the Court on consideration of the motion for final approval of a class and collective action settlement (the "Settlement") and award of attorneys' fees, costs, claim administration fee, and class representative awards, filed by Plaintiff Jeff Shipe ("Plaintiff"). Defendant does not oppose Plaintiff's motion. The Court has considered the parties' papers, relevant legal authority, the objection to the Settlement, and the record in this case. The Court has also considered the parties' arguments at the fairness hearing held on March 17, 2023. For the following reasons, the Court HEREBY GRANTS Plaintiff's motion for final approval and GRANTS the awards of attorneys' fees, costs, claim administration fee, and class representative awards.

**BACKGROUND**

Plaintiff Gary Ellis[1] originally filed this action against Defendant on October 26, 2020 in Contra Costa County Superior Court. Defendant removed the action to this Court on February 3, 2021. The FAC alleges that Defendant failed to pay the minimum wage for all pre-shift and post-

---

[1] Plaintiff Gary Ellis was the original named plaintiff in this action. Mr. Ellis passed away, and Plaintiff Shipe agreed to act as class representative. The operative FAC adding Plaintiff Shipe was filed on March 22, 2022. (*See* Dkt. No. 16.)

shift time worked and failed to pay all wages due upon termination and alleges violations of California Business & Professions Code sections 17200, *et seq.*, California Labor Code sections 201-203, 1194, 1194.2, 1197, and 1197.1, and Wage Order 16.  (*See* Dkt. No. 16.)

The parties agreed to participate in a mediation session, and as part of that process concluded that during the Class Period there were approximately 2,200 Class Members who worked an estimated 360,000 total "Qualified Shifts."  On March 2, 2022, the parties attended mediation with Jeffrey A. Ross and reached an agreement to settle the case.

Plaintiff moved for preliminary approval of the settlement on July 14, 2022.  (Dkt. No. 20.) The Court preliminarily approved the Settlement Agreement and class notice on August 23, 2022.  (Dkt. No. 25.)  Following preliminary approval, Defendant discovered the number of Qualified Shifts was substantively higher than the initial estimate.  The records showed approximately 2,613 Class Members during the Class Period, which is May 1, 2016, through June 2, 2022, with 446,059 Qualified Shifts.  Upon learning of the discrepancy in the number of Qualified Shifts, the parties renegotiated certain elements of the settlement and prepared an Amended Settlement Agreement, which the Court approved on October 4, 2022.  (Dkt. No. 27.)

Phoenix Settlement Administrators ("PSA") mailed the Notice to the Class Members on November 3, 2022 via U.S. first class mail.  (*See* Dkt. No. 28-4, Declaration of Jarrod Salinas ("Salinas Decl.") ¶ 6.)  The Notice advised Class Members of their number of Qualified Shifts and their right to dispute that number.  (*Id.* ¶ 7.)  The Notice advised Class Members of their ability to opt-out or object to the Settlement.  (*Id.* ¶¶ 8-9.)

On November 22, 2022, Plaintiff filed this motion for final approval of the Settlement and for attorneys' fees, costs, and incentive awards.  (Dkt. No. 28.)  Plaintiff filed a supplemental declaration in support of the motion on February 23, 2023.  (Dkt. No. 32.)  Defendant filed a declaration detailing compliance with the notice requirements of the Class Action Fairness Act, 28 U.S.C. section 1711, *et seq.* (Dkt. No. 29.)  The Court received one objection to the settlement, to which Plaintiff submitted a written response.  (*See* Dkt. Nos. 30, 33, 35.)

The Court will address additional facts as necessary in the analysis.

# ANALYSIS

## A. The Court Grants the Motion for Final Approval.

### 1. Jurisdiction and CAFA Compliance.

The Court has jurisdiction over this action pursuant to CAFA, 28 U.S.C. section 1332(d)(2). Defendant has provided the required CAFA notices to the appropriate governmental agencies.

### 2. Certification of the Settlement Class.

For purposes of the settlement, the Court certifies a class, pursuant to Federal Rule of Civil Procedure 23, comprising all current and former hourly employees who worked for Defendant in California during the Class Period. The Class Period is May 1, 2016, through June 2, 2022, inclusive.

### 3. Notice, Objections, and Requests for Exclusion.

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that distribution of notice of the settlement directed to the Class Members has been completed in conformity with the Amended Settlement Agreement and the Court's Order Approving Amendment. Defendant provided PSA with a list of 2,613 current and former hourly employees who worked for Defendant in California during the class period. (*See* Salinas Decl. ¶

3

3.) On November 3, 2022, PSA mailed notice to the 2,613 class members via U.S. First Class mail. (*Id.* ¶ 6.) The notice informed class members of the opportunity to dispute the number of Qualified Shifts on which their Individual Settlement Payment amount was based. (*Id.* ¶ 7.) The notice also informed class members of their right to opt out or object to the settlement. (*Id.* ¶¶ 8-9.)

As of February 23, 2023, twenty-one notices were undeliverable: thirteen remain undeliverable because an updated address could not be obtained via skip trace, and eight remain undeliverable because they were returned by the Post Office after a second mailing. (Dkt. No. 32-1, Supplemental Declaration of Jarrod Salinas ("Supp. Salinas Decl.") ¶ 3.) Thus, as of February 23, 2023, PSA mailed 2,592 out of 2,613 notices, which was a 99% success rate. (*Id.*) As of February 23, 2023, PSA had received zero disputes. (*Id.* ¶ 5.) As of February 23, 2023, PSA had not received any requests for exclusions or objections. (*Id.* ¶¶ 6-7.)

In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Settlement Class Members.

**4.    Objection from James Philip Daniels.**

Rule 23(e) allows settlement class members to object to the terms of the proposed class settlement to protect absent class members from any potentially unfair or inadequate settlement terms. An objector bears the burden of proving that the settlement is inadequate, unfair, or unreasonable. *United States v. Oregon*, 913 F.2d at 581; *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 583 (N.D. Cal. 2015). "In determining whether to finally approve a class action settlement, the Court considers whether there are any objections to the proposed settlement and, if so, the nature of those objections." *Ko v. Natura Pet Prod., Inc.*, No. C 09-02619 SBA, 2012 WL 3945541, at *6 (N.D. Cal. Sept. 10, 2012). "The fact that there is some opposition does not necessitate disapproval of the settlement; rather, the Court must evaluate the substance of the objections to determine whether they suggest serious reasons why the proposal might be unfair." *Id.*

The Court has received one objection to the proposed settlement from class member James Philip Daniels. The Court has carefully reviewed and considered the objection and Plaintiff's

4

written response to the objection. As discussed below, the Court concludes the objection does not present a compelling reason for rejecting the settlement and overrules Mr. Daniels' objections.

In his objection, Mr. Daniels makes several assertions that do not pertain to the settlement in this action. For example, he asserts that he was not provided with proper meal periods and rest breaks, had health and safety concerns regarding the work conditions, was improperly demoted, was not paid double-time pay, and experienced issues during his work for Harder outside of California. These assertions relate to matters outside the scope of the settlement and address claims that are not at issue in this action. Thus, the Court overrules these objections because they are not germane to the issue of whether this settlement is fair. *See Nwabueze v. AT&T Inc.*, No. C 09-01529 SI, 2013 WL 6199596, at *7 (N.D. Cal. Nov. 27, 2013).

Mr. Daniels also objects to the settlement because he believes he is entitled to a more favorable result personally. PSA mailed Mr. Daniels' notice on November 2, 2022. (Supp. Salinas Decl. ¶ 4.) Mr. Daniels was credited with 395 shifts, with a total estimated settlement amount of $1,070.78. (*Id.*; *see also id.*, Ex. A) Mr. Daniels did not dispute his number of qualified shifts by the method provided in the Notice. (*Id.*) Mr. Daniels also has not provided evidence to substantiate his claim that the calculation of his individual settlement payment was unfair or inadequate.[2] The Court overrules this objection. *See In re Google Plus Profile Litig.*, No. 5:18-cv-06164-EJD, 2021 WL 242887, at *5 (N.D. Cal. Jan. 25, 2021).

Mr. Daniels also appears to object to the adequacy of the settlement on the basis that he did not receive the Notice until shortly before the deadline to opt out, object, or dispute the number of Qualified Shifts. The record shows Mr. Daniels received the Notice sufficiently in advance of the deadline to opt-out, object, or dispute his shifts. (*See* Supp. Salinas Decl. ¶ 4.) Indeed, he reached out to class counsel a week prior to the deadline, and they timely responded to his questions about the Settlement. Thus, the Court overrules this objection.

---

[2] On or around March 1, 2023, Mr. Daniels sent class counsel an email that appears to contain embedded images of hours worked, but it is unclear whether these hours were limited to the work performed for Defendant. (*See* Dkt. No. 35, Supplemental Declaration of Robert Spencer ¶ 2; *id.*, Exs. 1, 2.) The information included in Mr. Daniels's email does not establish that the calculation of his individual settlement amount was unfair or inadequate.

For these reasons, the Court concludes Mr. Daniels' objection does not present a compelling reason for rejecting the settlement and overrules Mr. Daniels' objections.

### 5. The Relevant Factors Weigh in Favor of Concluding the Settlement is Fair, Reasonable, and Adequate under Rule 23.

Federal Rule of Civil Procedure 23(e) permits a court to approve a settlement that will bind a class "only on finding that it is fair, reasonable, and adequate after considering" a number of factors. Fed. R. Civ. P. 23(e)(2); *see also Hanlon*, 150 F.3d at 1026. The factors the Court must consider are whether:

> the class representatives and class counsel have adequately represented the class; the proposal was negotiated at arm's length; the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D). Further, the court "may consider some or all" of the following factors:

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

This case involves disputed issues relating to the proper calculation of and the extent of Defendant's alleged liability. For example, the parties dispute whether evidence of willfulness is required to impose liability for the Labor Code § 1194.2 liquidated damages claim and the Labor Code § 203 waiting time penalty claim. Defendant also disputes that a class action could be properly maintained under Federal Rule of Civil Procedure 23. Thus, the case involves several

6

bona fide disputes.

The record shows that the settlement was reached as a result of intensive, serious, and non-collusive arm's length negotiations conducted with the assistance of Jeffrey A. Ross during a mediation session conducted on March 2, 2022

The Court has considered the nature of the claims, the amounts and kinds of benefits paid in settlement, the allocation of settlement proceeds among the class members, and the fact that a settlement represents a compromise of the parties' respective positions rather than the result of a finding of liability at trial. To settle the action, Defendant has agreed to pay $1,633,880.48 plus Defendant's share of payroll taxes. (Dkt. No. 28-2, Declaration of Eric Grover ("Grover Decl.") ¶ 36.) After subtracting fees and costs, the net settlement amount is estimated to be $1,215,880.48, to be distributed to class members based on the formula set forth in the Settlement Agreement. (Supp. Salinas Decl. ¶ 9; *see also* Grover Decl. ¶ 38.)

Class members will receive an average individual settlement payment of $465.32. (Supp. Salinas Decl. ¶ 10.) The estimated highest individual payment will be $3,777.44, and no individual settlement payment will be less than $25. (*Id.*) Defendant has no reversionary interest in the settlement fund, and any unclaimed funds will be sent to the State Controller's Office, Unclaimed Property Division. (Grover Decl. ¶ 53.) Accordingly, the Court finds the relief provided for the class is adequate. The parties have also shown that liability is not certain, and if the case were to proceed to trial, the amount of damages could be reduced or eliminated. Additionally, the favorable reaction of the class members favors granting the motion.

Based on the record as a whole, the Court finds that the relevant factors support a finding that the Settlement is fair, adequate, and reasonable. Class counsel and the named Plaintiffs have adequately represented the Settlement Class Members.

The Court concludes the Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class Members, and it GRANTS Plaintiff's motion for final approval.

**B.     The Court Grants the Request for Fees, Costs, and Incentive Awards.**

   **1.     Attorneys' Fees.**

The Court has an "independent obligation" to ensure Plaintiff's fee request is reasonable.

7

*See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). In a common fund case, district courts may use either the percentage-of-the-fund method or the lodestar method to calculate an appropriate attorneys' fee award. *Id*. When applying the percentage-of-the-fund method, an attorneys' fee award of "twenty-five percent is the 'benchmark' that district courts should award." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Even when courts employ the percentage of recovery method, a lodestar crosscheck on the reasonableness of the fee is often performed. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Any class member must be allowed an opportunity to object to the fee motion itself, aside from any objection the class member may have to the preliminary notice that such a motion will be filed. *See In re Mercury Interactive Corp. Sec. Litig.* 618 F.3d 988, 993-95 (9th Cir. 2010).

Class counsel requests fees in the amount of $375,000, which is 23% of the common fund. This amount is less than the Ninth Circuit's general benchmark of 25%. Here, class counsel obtained a significant result for the class. One class member objected to the settlement and no class members objected to the fee motion, which suggests strong support for the settlement's outcome. Class counsel is experienced in litigating employment class actions and achieved the favorable result in this matter through a significant commitment of effort. The Court finds the requested award of attorneys' fees is reasonable in light of the work class counsel performed in the case, the contingent nature of the action, and the results achieved.

A lodestar cross-check also supports the reasonableness of the requested fee award. The calculation of the lodestar "measures the lawyers' investment of time in the litigation" and "provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. Counsel has submitted declarations of hourly rates of $950 for partners and $675 for senior associates. (Grover Decl. ¶ 61.) The Court finds these rates are reasonable and consistent with the rates charged by other attorneys with similar experience. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *Morrison v. Am. Nat'l Red*

*Cross*, No. 19-CV-02855-HSG, 2021 WL 75743, at *7 (N.D. Cal. Jan. 8, 2021). Class counsel has billed approximately 350 hours. Class counsel submitted billing records to substantiate their assertions and hours worked. The Court has reviewed the hours worked and finds them reasonable.

Applying the hourly fees class counsel seeks to the number of hours billed, counsel's lodestar is $282,567.50. This lodestar results in a positive multiplier of approximately 1.3, which the Court finds is a modest and appropriate multiplier in this case. Thus, the Court concludes the attorneys' fees requested are reasonable. The Court GRANTS the request and awards class counsel $375,000 in attorneys' fees. The payment of fees to Class Counsel shall be made in accordance with the terms of the Settlement.

### 2. Costs.

Class counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted). Class counsel seeks $11,807.18 in costs, which encompasses mediation fees, filing fees, courier charges, mileage, meals, and postage. Counsel has submitted records substantiating the costs incurred. (*See* Grover Decl. ¶ 77; Bernstein Decl. ¶ 4.) The Court finds these costs were reasonably incurred and GRANTS the request for costs in the amount of $11,807.18. The payment of costs to Class Counsel shall be made in accordance with the terms of the Settlement Agreement.

### 3. Claims Administrator Fees.

PSA agreed to a payment of not more than $18,000 to perform the duties required to administer the settlement and has calculated that its actual costs will not exceed $18,000. The Court GRANTS the request to approve payment in the amount of $18,000 to PSA for settlement administration services in this matter in accordance with the terms of the Settlement Agreement.

### 4. Incentive Awards.

Finally, Plaintiffs move for an incentive award in the amount of $4,000 to Plaintiff Shipe and $4,000 to the estate of Gary Ellis. "Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958. The decision to approve such an award is a matter within the Court's

9

discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). An incentive award is designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action…" *Rodriguez*, 563 F.3d at 958-59. "[D]istrict courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives. ... [C]oncerns over potential conflicts may be especially pressing where, ... the proposed service fees greatly exceed the payments to absent class members." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal citation and quotation marks omitted).

In wage and hour cases, many courts in this district have held that a $5,000 incentive award is "presumptively reasonable." *See, e.g.*, *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (observing that "as a general matter, $5,000 is a reasonable amount"); *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *11 (N.D. Cal. Jan. 29, 2016) (awarding $5,000); *Odrick v. UnionBanCal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012) (same). Incentive awards may also be especially appropriate in wage and hour class actions, where a named plaintiff undertakes "a significant 'reputational risk' in bringing [an] action against [plaintiff's] former employer." *Covillo v. Specialty's Café*, No. C-11-00594 DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (citing *Rodriguez*, 563 F.3d at 958-59).

Here, the Plaintiff Shipe and the estate of Plaintiff Gary Ellis request an award of $4,000.00 each. Plaintiff Shipe attests that he has spent several hours working with class counsel in this case and worries about the reputational risks and potential repercussions of being a named plaintiff in a class action wage and hour lawsuit. (Dkt. No. 28-5, Declaration of Jeff Shipe ¶¶ 4-8, 10.) Dian Ellis, the widow of Plaintiff Gary Ellis and the authorized representative of his estate, attests that she continued to participate in and monitor the progress of this case following her husband's death. (Dkt. No. 28-6, Declaration of Dian Ellis ¶¶ 3-6.) She further attests that Mr. Ellis worked on this case before his death and was concerned about the reputational risks of serving as a named plaintiff in lawsuit. (*Id.* ¶ 8.) The Court finds the requests reasonable. The Court GRANTS the motion for incentive award in the amount of $4,000 each to Plaintiff Shipe

10

and to the estate of Plaintiff Gary Ellis. The payment of the Class Representative Incentive Awards shall be made in accordance with the terms of the Settlement Agreement.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for final approval and GRANTS Plaintiff's motion for attorneys' fees, costs, and incentive awards.

IT IS FURTHER ORDERED:

1. No later than 28 calendar days of the Effective Date of the Settlement Agreement, Defendant shall deposit into the Qualified Settlement Fund established by Phoenix Settlement Administrators ("PSA") the Maximum Settlement Amount, plus Defendant's share of the payroll taxes. PSA shall disburse the settlement funds in accordance with this Final Approval Order and Judgment and the terms of the Settlement Agreement.

2. The Court hereby confirms Keller Grover LLP and the Law Offices of Scot D. Bernstein, A Professional Corporation, as Class Counsel.

3. The Court approves the distribution of the Net Settlement Amount to Settlement Class Members in accordance with the terms of the Settlement Agreement.

4. The Court approves the payment of any residual funds to the State Controller's Office, Unclaimed Property Division to be made in accordance with the terms of the Settlement Agreement.

5. Within 21 days after the settlement checks become stale, the parties should file a Post-Distribution Accounting, which provides the information set forth in the Northern District's Procedural Guidance for Class Action Settlements.

6. If this settlement does not become final and effective in accordance with the terms of the Settlement Agreement, this Final Approval Order and Judgment and all orders entered in connection herewith, shall be vacated and shall have no further force or effect.

7. This Judgment and Final Order shall have a res judicata effect and bar the named Plaintiff and each Settlement Class Member from bringing any action asserting any Released Claims against any of the Released Parties.

8. This Court shall retain jurisdiction to enforce the terms of the Settlement

Agreement and this Judgment and Final Order.

The Court HEREBY DISMISSES this action WITH PREJUDICE, and HEREIN ENTERS JUDGMENT in this matter. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 22, 2023

_____
JEFFREY S. WHITE
United States District Judge